**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Jerome JOHNSON,
Defendant–Appellant.**

**No. 15136.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 30, 1987.

Lynn Brown, Pros. Atty., Charleston, for plaintiff-respondent.

Nancy Hentig Narrow, Benton, for defendant-appellant.

GREENE, Presiding Judge.

Defendant, Jerome Johnson, was charged by information with the class D felony of resisting or interfering with arrest, § 575.150.1(1).[1] After a trial by court, Johnson was found not guilty of a felony, but guilty of the class A misdemeanor of resisting arrest, and was sentenced to serve one year in the Mississippi County jail.

On appeal, Johnson contends the evidence produced at trial was insufficient to sustain the conviction. We agree, and reverse.

Viewed in the light most favorable to the state, the evidence introduced at trial was as follows. On the evening of January 3, 1986, Johnson entered the R & R Package Liquor Store in Charleston, Missouri. Ronnie Gordon, the owner of the store, was clerking that evening. Johnson, who was known to Gordon, asked Gordon for change for a ten dollar bill. While Gordon was getting the change, Johnson, who was "joking with me," was "taking potato chips, cakes, putting them under his jacket and giving the impression that he was stealing." Johnson had been in the store before but, "[Gordon] could ask him to stop what he was doing and he would go ahead and leave." Gordon knew Johnson was not attempting to steal anything, but felt that Johnson was "crushing my cakes" while he was teasing Gordon. Gordon, who had given Johnson the change, finally went around the counter, grabbed Johnson by the arm and told him to leave. Johnson's money was knocked out of his hand by Gordon during this encounter. Johnson told Gordon to pick up the money—Gordon refused. About that time, another customer, Joe Guy, "grabbed the money and run out the door." Johnson demanded Gordon give him his ten dollars back, and when Gordon refused to do so, the two men started arguing. Gordon told Johnson to leave, and when Johnson refused to do so, Gordon called the police.

Three police officers responded, and came to the scene. One of the officers, Sergeant Walter Westerhold, of the Charleston City police force, testified that about 11 p.m., he was called to the R & R Package Liquor Store. When asked what the call was in reference to, he said, "[j]ust a disturbance." When Westerhold entered the store, Gordon pointed at Johnson and said, "[t]his was the problem," without saying what the problem was. Johnson had his right hand under his coat. When Westerhold asked him to remove it, Johnson refused and called Westerhold "an obscene name." Westerhold and another officer, Roger Crites, then subdued and handcuffed Johnson. During this encounter, Johnson had his hands "in the center of [Westerhold's] chest," and pushed him, and also grabbed Westerhold's shirt. When the trio arrived at the police station, Johnson called Westerhold some more names, whereupon Johnson, whose hands were handcuffed behind him, was shoved through a door by Westerhold. Johnson's face hit the door glass and shattered it, causing a cut on the side of his face that required 20 stitches to close. When searched, Johnson did not have any knife or other weapon in his possession, but did have a package of Hostess cupcakes. Johnson was a small man,

---

1. Unless indicated otherwise, all references are statutes are to RSMo 1979, V.A.M.S.

while Westerhold was 6'4" tall and weighed 235 pounds. After Johnson was taken to the hospital for treatment of his injuries, the felony charge was filed against him.

At the close of the state's evidence, defense counsel moved for a judgment of acquittal. One of the grounds for the motion was there was not sufficient evidence to show what crime Johnson was accused of having committed which would justify an arrest. The trial court, over the objection of defense counsel, declined to rule on the motion, but said it would take the motion under advisement, stating: "I don't know at this time if the State has met the burden of sustaining the question you raised about perpetration of a felony which would sustain felony assault, but I don't know if that doesn't mean there's not lesser-included offenses that he could be just as guilty of."

The only witness for the defense was Joe Guy who said he had re-entered the store to return the money about the time the officers arrived, and that the officers handcuffed both Guy and Johnson and took them to the police station. Guy did not see any struggle between Johnson and the officers, and was not told why they were being arrested.

At the close of all the evidence, defense counsel renewed the motion for judgment of acquittal. The trial judge stated that while it was clear that Johnson was not guilty of felony resisting arrest, he was guilty of misdemeanor resisting arrest, reasoning that since Johnson resisted Westerhold while Westerhold was attempting to subdue him, he was guilty of a misdemeanor.

■ The prosecution of this case, and the ensuing trial court decision were based on faulty procedures and premises. The information charging Johnson with the class D felony of resisting or interfering with arrest alleged: "defendant, knowing that Off. Walter Westerhold was making an arrest, for the purpose of preventing the said officer from effecting the arrest, he resisted the arrest of himself by threatening the use of violence or physical force." This charge does not conform to MACH–

CR 29.60, which requires that the information for resisting arrest charges name the offense for which the person is being arrested. The mandatory verdict directing instruction in resisting arrest cases, MAI–CR2d 29.60, mirrors its correlative pattern charge by also requiring that the offense for which the person is purportedly being placed under arrest be proven as part of the proof that the defendant resisted arrest.

■ The legal requirements contained in MACH–CR 29.60 and MAI–CR2d 29.60 to the effect that the offense for which the person is being arrested be named in the charge, and be proved before a valid conviction could ensue, are expressions of the statutory intent reflected in § 575.150, which provides, in its relevant portion, as follows:

1. A person commits the crime of resisting or interfering with arrest if, knowing that a law enforcement officer is making an arrest, for the purpose of preventing the officer from effecting the arrest, he:

(1) Resists the arrest of himself by using or threatening the use of violence or physical force or by fleeing from such officer; or

. . . .

2. This section applies to arrests with or without warrants and *to arrests for any crime or ordinance violation.* (Emphasis added.)

It is clear from the statute in question that the state must prove, as an element of the crime of resisting arrest, that the arrest the defendant is charged with resisting was for a crime or ordinance violation.

■ The question involved here was recently addressed by the Supreme Court of Missouri in *State v. Furne*, 642 S.W.2d 614 (Mo. banc 1982). The facts in *Furne*, as set out in that opinion at p. 615 are as follows:

At approximately 11:50 p.m. on October 16, 1981, police officers Michael Compton and Charles Loar responded to a reported disturbance at the Hillcrest Mobile Home Park in Liberty. Officer

Compton arrived first and found appellant rummaging through a white Ford Pinto. When Officer Loar arrived, Officer Compton approached appellant and asked him what he was doing. Appellant responded with a vulgar remark. The officers, who were in uniform, attempted to question appellant further, but he began to curse them loudly and shout obscenities. A crowd gathered. The officers informed appellant that he was under arrest, and at that point appellant attempted to push past and wrestle with them. Appellant's unbecoming and obstinate behavior continued throughout the ride to and into the county jail.

Furne was charged with felony resisting arrest, with the information charging the police officer was arresting Furne for the crime of disorderly conduct, and that Furne, knowing such fact, resisted arrest by using or threatening to use violence or physical force. Furne was convicted of felony resisting arrest. The Supreme Court reversed, stating at p. 616, that as § 575.150(4) provides that " '[r]esisting, by means other than flight, or interfering with an arrest for a felony, is a class D felony; otherwise, resisting or interfering with arrest is a class A misdemeanor.' " The degree of the crime of resisting arrest, except when the resistance is by flight, is linked to the degree of the underlying offense for which the arrest was made. The court said there was no evidence that Furne had committed any underlying felony, so he could not have been guilty of felony resisting arrest, and that since the information charged Furne with disorderly conduct, which is not a state crime, and in the absence of any proof that disorderly conduct was a municipal ordinance violation, the state had also failed to prove a misdemeanor resisting arrest charge. Reversal followed.

■ In the present appeal, the shortcomings of the state's case are even more pronounced than those in *Furne*. Not only did the information fail to allege the offense which Johnson was supposed to have committed, but also, the state failed to prove at trial what statute or ordinance had supposedly been violated by Johnson as required by statute. The state has the burden of proving each and every element of a criminal offense. *State v. Davis*, 598 S.W.2d 189, 191 (Mo.App.1980). By not proving what the underlying offense was, the state failed to carry its burden. The state's brief filed here does not even contend that Johnson had committed *any* crime prior to the time Sgt. Westerhold grabbed his hand.

At trial, Westerhold sought to explain this action by saying he thought Johnson might have a gun or knife in his pocket. However, there is nothing in evidence to justify such a conclusion. Johnson had not displayed, or threatened anyone with the use of a gun or a knife, and no knife or gun was found in his pocket when he was searched after his arrest.

While a proper information charging Johnson with a crime or ordinance violation, such as peace disturbance or malicious destruction of property, could have been filed, and possibly proven, it was not. Criminal convictions cannot be based on speculation of what might have been. We do not infer that we condone Johnson's boorish conduct and antisocial behavior. However, in order to transfer such conduct into criminal conduct, the person involved must be properly charged, and the charge must be proven by competent evidence. Such was not the case here.

■ The judgment of conviction is reversed. Since the double jeopardy clause of the constitution precludes a second trial, once the reviewing court finds the evidence introduced at the first trial to be legally insufficient, remand is not appropriate, and the defendant is ordered discharged. *Furne*, supra, 642 S.W.2d at 617.

CROW, C.J., and HOLSTEIN, J., concur.