**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Joseph A. SMILEY, Defendant–
Appellant.**

**No. 28264.**

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 13, 2007.

Kent Denzel, Asst. Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cory Lee Atkins, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Judge.

Joseph Smiley (Defendant) contends the court plainly erred in failing to instruct the jury, *sua sponte*, to disregard testimony concerning a prior, unrelated arrest during his trial on burglary charges. This Court affirms.

Defendant was charged by amended information with two counts of committing the class C felony of burglary in the second degree. *See* § 569.170.[1] The information also alleged that Defendant was a persistent offender. *See* § 558.016.3. During the trial, the court found Defendant to be a persistent offender beyond a reasonable doubt. A jury convicted Defendant of the charged offenses, and the trial court determined punishment. *See* § 557.036.4(1). Defendant received an enhanced sentence of 12 years imprisonment on each count, and the sentences were ordered to run concurrently. *See* § 558.011.1; § 558.016.7(3).

■ Defendant does not contest the sufficiency of the evidence to support his conviction. "We consider the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, and we reject all contrary evidence and inferences." *State v. Campbell*, 122 S.W.3d 736, 737 (Mo.App.2004). We have applied this standard in summarizing the facts set forth below.

Smokin Cheap is a tobacco shop located on Commercial Street in Springfield, Missouri. On August 24, 2001, a crowbar was used to break out the front window of that establishment. Some pipes and 45 cartons of Marlboro cigarettes were stolen.

---

1. All references to statutes are to RSMo (2000)

Greene County Damage Freight & Food Sales (Food Sales) is a combination smoke shop and salvage grocery store located on West Kearney Street in Springfield, Missouri. On August 30, 2001, a plate glass window at this establishment was smashed. Someone entered through the broken window and stole a number of cartons of Marlboro Red cigarettes. One carton of Marlboro cigarettes was found outside the building in front of the broken window.

Corporal Chad White (White) works for the Springfield Police Department and was assigned to investigate the aforementioned burglaries. He recovered the crowbar that was used to break out the window at Smokin Cheap. During his investigation, he learned that a Chevrolet pickup was suspected of being used in the burglary at Food Sales. On September 4, 2001, Defendant was arrested on an unrelated charge. The vehicle he was in at the time was a Chevrolet pickup matching the description of the one used at the Food Sales burglary.

On September 5, 2001, Defendant was interviewed by White and Corporal Brian Crum (Crum).[2] Before Defendant was interrogated, he filled out a written form waiving his *Miranda* rights.[3] The form included a sentence that stated, "I was taken into custody _____." Because Defendant had been arrested the previous day on another charge, White told Defendant not to put anything in the blank. White explained that he was investigating the burglaries at Smokin Cheap and Food Sales, but he did not provide Defendant with any information concerning how the burglaries had occurred or what had been taken. Defendant confessed to committing both crimes. With respect to the first burglary, Defendant admitted that he went to Smokin Cheap with two other accomplices. One of the accomplices threw a crowbar into the front window of the shop and shattered the glass. Defendant and another accomplice entered the store through the window and filled up a duffle bag with cigarettes. Upon exiting the building, they got into a vehicle and left. With respect to the second burglary, Defendant admitted that he and an accomplice went to Food Sales. The accomplice used a baseball bat to break out the business' front glass. Defendant entered the store though the broken window, grabbed an armful of Marlboro Red cigarettes and exited the building.

At trial, both White and Crum testified. Each witness recounted Defendant's confession to committing the charged burglaries. The lone issue on appeal involves certain testimony given by White. Before addressing the merits of Defendant's argument, the following additional facts are necessary. During White's direct examination, he testified as follows:

Q Okay. Uh, now any of these two cases, what, if any, information did you receive about possible suspects or vehicles?

A Okay. In reference to which case?

Q Well, let's start with the West Kearney case.

A The case on West Kearney, there was an arrest that was made, uh, on September 4th of 2001 in reference to another crime. The suspect vehicle in reference to that case matched the suspect vehicle description that was

---

**2.** Crum attended the interview at White's request because the new Greene County Jail had just opened, and the interview rooms were not yet equipped with recording equipment.

**3.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

listed in the report for the Greene County Food & Freight crime that occurred on West Kearney.

Q Okay. Let me stop you right there. What type of vehicle was that?

A It was a Chevy pickup.

Q Okay. And based on information you received about both cases, at some point did you make contact with Joseph Smiley in reference to these cases?

A Yes, I did.

Q And what day did that contact occur on these cases?

A In reference to these cases, I contacted Mr. Smiley on September 5th of 2001.

White then identified Exhibit 15, which was the written form filled out by Defendant to waive his *Miranda* rights. White explained how the form was completed and signed by Defendant prior to being interrogated. White then recited the various provisions of the form. He explained the blank line on the form this way: "Again, there's a place there that says 'I was taken into custody,' which did not apply in this case, because he had been arrested the day before in reference to another crime." Defendant did not object to the statement.[4] This arrest was never mentioned again during the remainder of the trial.

After the State rested, Defendant testified on his own behalf. He denied any involvement in either burglary. He then admitted that he was a convicted felon and had just started serving time in federal prison. On cross-examination, Defendant identified his signature on Exhibit 15. He acknowledged having a prior conviction in federal court for theft of firearms and prior state convictions for receiving stolen property and tampering. On redirect, Defendant admitted that he had stolen items in the past. However, he denied any involvement in the charged crimes and asked the jury to "rule on the evidence alone and not on my past record."

The jury found Defendant guilty on both counts. There was an intervening post-conviction case, appeal and remand for resentencing. *See Smiley v. State,* 196 S.W.3d 674 (Mo.App.2006). After Defendant was resentenced, this appeal followed.

█ On appeal, Defendant contends the trial court erred in failing to instruct the jury, *sua sponte,* to disregard White's testimony concerning Defendant's prior arrest. Defendant concedes that this issue is not preserved for appeal, and he seeks plain error review.

█ Rule 30.20 provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The outcome of plain error review depends heavily on the particular facts and circumstances of each case. *State v. Roper,* 136 S.W.3d 891, 900 (Mo. App.2004); *State v. Ficke,* 892 S.W.2d 814, 817 (Mo.App.1995). "Plain error review is used sparingly and is limited to those cases where there is a clear demonstration of manifest injustice or miscarriage of justice." *State v. Smith,* 185 S.W.3d 747, 757 (Mo.App.2006). The burden of proving the existence of such manifest injustice or a miscarriage of justice rests on Defendant. *State v. Stanley,* 124 S.W.3d 70, 77 (Mo. App.2004).

Defendant contends he is entitled to plain error relief because of the trial court's admission of White's testimony con-

---

**4.** In addition, Defendant did not include any complaint about this statement in his motion for new trial.

cerning Defendant's arrest on an unidentified charge. In order for Defendant to clearly demonstrate that a manifest injustice or miscarriage of justice has occurred, he must prove that the court's failure, *sua sponte*, to instruct the jury to disregard this isolated bit of testimony was outcome-determinative. *See State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006); *State v. Still*, 216 S.W.3d 261, 269 (Mo.App.2007); *State v. Louis*, 103 S.W.3d 861, 864 (Mo. App.2003). The State argues that relief under the plain error rule should be denied because Defendant has failed to meet that burden. We agree.

■ Had this claim of error been preserved, we would analyze any prejudicial effect using a five-factor test. *See State v. Bell*, 66 S.W.3d 157, 166 (Mo.App.2001); *State v. Silas*, 885 S.W.2d 716, 720 (Mo. App.1994). These factors are: (1) whether the statement was deliberately elicited by the prosecutor or was a voluntary, unresponsive comment by the witness; (2) whether the statement was emphasized and magnified by the prosecutor or was a singular and isolated event; (3) whether the statement made specific reference to crimes committed by the defendant or was vague and indefinite; (4) if no objection is made to the statement, whether the reference was so prejudicial that its effect could not have been removed by direction to the jury; and (5) in view of the other evidence presented and the strength of the State's case, whether the statement played a decisive role in determining the defendant's guilt. *See State v. Smith*, 934 S.W.2d 318, 320–21 (Mo.App.1997).

Our review of the record indicates that none of these factors favor Defendant. First, there is nothing to suggest that White's comment was deliberately elicited by the State. Instead, it appears to have been a spontaneous comment by the witness to explain the blank line in Exhibit 15. Second, White's statement was a singular and isolated event that did not recur during the trial. Third, White's statement was a vague and indefinite remark that did not specifically refer to any particular crime committed by the Defendant. That lack of specificity stands in stark contrast to Defendant's own decision to candidly disclose his criminal convictions and give specific details about past offenses as part of his strategy to convince the jurors that he did not commit the burglaries with which he was charged. Fourth, Defendant did not object to White's statement at trial or raise this issue in his motion for new trial. Such inaction by Defendant suggests that he did not notice the statement or think it objectionable at the time. Moreover, we conclude that an instruction from the court to disregard the statement would have been effective to eliminate any potential prejudice created by this single comment. The very fact that Defendant charges the trial court with error in failing to take such action *sua sponte* supports this conclusion. Finally, the strength of the State's case—including Defendant's confessions to both burglaries—belies his argument that White's passing comment played a decisive role in the jury's determination of guilt. When Defendant was interrogated, he had been told nothing about the manner in which the burglaries had been committed or what had been stolen. His confession included specific details about how entry into each building was effected and what items were taken. His description of what had occurred was corroborated by physical evidence recovered at each crime scene. Such intimate knowledge of how these burglaries were committed and what specific merchandise was stolen strongly supports the conclusion that Defendant was personally involved in committing these crimes.

Defendant has failed to demonstrate that he suffered any prejudice at all from White's isolated comment. *See Bell*, 66 S.W.3d at 166–67. As this Court noted in *State v. Vivone*, 63 S.W.3d 654 (Mo.App. 1999), plain error relief is generally unavailable when the incriminating evidence is strong, the defendant does not dispute the sufficiency of the evidence, and he or she confessed to the crime. *Id.* at 660. The record demonstrates no manifest injustice or miscarriage of justice. The judgment is affirmed.

PARRISH, P.J., and SCOTT, J., concur.