**STATE of Missouri, Respondent,**

v.

**Codey SMITH, Appellant.**

**No. SD 29574.**

Missouri Court of Appeals, Southern District.

Sept. 28, 2009.

Kent Denzel, Columbia, for Appellant.

Chris Koster, Attorney General, Daniel N. McPherson, Assistant Attorney General, Jefferson City, for Respondent.

DANIEL E. SCOTT, Chief Judge.

A jury found Codey Smith guilty of robbery and armed criminal action. His appeal is limited to Rule 30.20 plain error claims.[1]

---

1. Rule references are to Missouri Court Rules (2008). Rule 30.20 provides, in pertinent

## Principles of Plain Error Review

 "Rule 30.20 is no panacea" for unpreserved error, and does not justify review of all such complaints, but is used sparingly and limited to error that is evident, obvious, and clear. *State v. Campbell*, 122 S.W.3d 736, 739–40 (Mo.App. 2004). "[N]ot all prejudicial error—that is, reversible error—can be deemed plain error." *State v. Dowell*, 25 S.W.3d 594, 606 (Mo.App.2000). A defendant's Rule 30.20 burden is "much greater"—not merely to show prejudice, but manifest injustice or a miscarriage of justice—which in this context means outcome-determinative error. *Campbell*, 122 S.W.3d at 740.

 We are not required to review for plain error; to do so is within our discretion. *Id.* The two-step analysis is (1) did the trial court commit evident, obvious, and clear error affecting the defendant's substantial rights; and (2) if so, did such plain error actually result in manifest injustice or a miscarriage of justice? *State v. Darden*, 263 S.W.3d 760, 762–63 (Mo. App.2008). Unless a defendant gets past the first step, any inquiry should end. *State v. Spry*, 252 S.W.3d 261, 266 (Mo. App.2008).

## Point I

 Smith claims the trial court plainly erred in letting him withdraw his joint motions for change of judge and venue under the following circumstances.

At the arraignment, Smith's then-counsel suggested that he might file such motions. He did so on April 28 and noticed them for a May 5 hearing. On May 2, Smith's new lawyer entered the case. He asked the court not to rule on the motions, which the defense asked to withdraw at the next court hearing:

[DEFENSE COUNSEL]: Yes, Your Honor. Mr. Smith, I have discussed the matter with Mr. Smith. He would like to withdraw the Motion for Change of Judge and Change of Venue that was filed.

THE COURT: Mr. Smith, let me ask you a couple of questions in regard to that.

You have heard your attorney state that in counties of this size, change of judge and change of venue are automatic, if requested, which means that the case would be heard somewhere other than Barton County and it would be a different judge, other than myself, hearing the case.

If you withdraw those, that means the case is going to be heard here in Barton County and I am going to be the judge on the case. And that's irrespective of whether there is a trial or whether there is some kind of plea bargain.

I would advise you, I don't have to accept plea bargains. If I don't accept a plea bargain, you can't get rid of me for that reason. I would still be the judge and hear your case.

Do you understand all of that?

CODEY SMITH: Yes, sir.

THE COURT: Do you agree with your attorney that you are wanting to withdraw the Applications for Change of Judge and Change of Venue?

CODEY SMITH: Yes, sir.

The court let Smith withdraw his motions, and he went to trial without complaint or further comment on these issues. Smith even waived his right to jury sentencing and asked the court to do so instead.

part, that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

Now, however, Smith claims the trial court lost all authority to proceed (except to disqualify itself) after the foregoing motions were filed.[2] We decline to say all we might; it is enough to note that Smith waived any complaint by asking the trial court not to rule; by seeking to withdraw the motions and persuading the court to let him do so; and by going to trial with no complaint, objection, or further comment. Waiver has been found in far less compelling circumstances. *See, e.g., State v. Baller,* 949 S.W.2d 269 (Mo.App.1997); *Ferguson v. Pony Express Courier Corp.,* 898 S.W.2d 128 (Mo.App.1995); *State v. Purdy,* 766 S.W.2d 476 (Mo.App.1989). The trial court was not manifestly unjust to Smith in granting his requests, and did not miscarry justice by doing precisely as Smith and his counsel asked. We reject Point I.

## Point II

■ Smith also claims the trial court plainly erred in not *sua sponte* instructing the jury to disregard a deputy's comment about investigating "a series of thefts," which Smith argues was evidence of uncharged crimes. Even had this claim been preserved, however, we would find no prejudice since the brief and singular statement was not magnified, emphasized, or deliberately elicited by the State;[3] it made no specific reference to crimes allegedly committed by Smith; and it was not decisive in light of other evidence and the strength of the State's case. *See State v. Smiley,* 240 S.W.3d 214, 218 (Mo.App. 2007). Smith's failure to object at trial also suggests that the statement then did not seem significant or objectionable. *Id.*

We do not expect trial judges to assist counsel in the trial of a lawsuit. Too often they are accused of trying "my law suit." They preside to judge a lawsuit. Sua sponte action should be exercised only in exceptional circumstances. In the case sub judice the judge was in a better position to evaluate the prejudicial effect of the proffered question and,

---

**2.** Smith cites Rule 37.08 and *State v. Bradshaw,* 81 S.W.3d 14, 27 (Mo.App.2002) for the familiar rule that a trial judge faced with such a joint motion can grant only the change of judge, without addressing venue, and should do so promptly. *Bradshaw* did not involve or address the litigant or lawyer who almost immediately second-guesses his own motion and seeks to withdraw it without a ruling, and to which his opponent does not object; or the trial judge who reasonably honors all such requests to the prejudice of no one.

**3.** To the contrary, the State seemingly tried to avoid further questionable testimony. After the prosecutor asked the deputy why she sought help from Crawford County (Kansas) authorities, the record reads as follows:

> A. At that time, we were investigating a series of thefts in both Crawford, Cherokee and Barton County. We believed that this group of individuals were probably involved. I had asked for the assistance of Crawford County. We all got a task force together.

> Q. Let me stop you there.
> A. Okay.
> Q. Was part of the reason you enlisted Crawford County's help was to find the truck?
> A. Yes, sir.
> Q. And who assisted you with that?
> A. Detective Tim Hervey and the Dive Team from Newton County.
> Q. As far as locating it, you are not, you don't work over there?
> A. No, sir.
> Q. And are you familiar with the area over there?
> A. Not really, no.
> Q. So, you thought it best to talk to somebody who was familiar?
> A. Yes, sir.
> Q. And somebody who works over there and talked to him about that?
> A. Yes, sir.
> Q. I will follow up with him later.

although not objected to, determined that no harmful result occurred. *State v. Drewel,* 835 S.W.2d 494, 498 (Mo. App.1992). Thus, appellate courts rarely criticize a trial court for not injecting itself into a witness's examination; "[i]ndeed, such invitations have been rejected in all but the most unusual circumstances." *State v. Roper,* 136 S.W.3d 891, 902 (Mo. App.2004). We deny Point II, and affirm the judgment and convictions.

RAHMEYER, J., and LYNCH, P.J., Concur.