**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Eric Jerone WILLIAMS, Defendant–
Appellant.**

**No. SD 30225.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 6, 2010.

Margaret M. Johnston, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and Robert J. Bartholomew, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Eric Jerone Williams ("Defendant") appeals the trial court's judgment, entered following a jury trial, convicting him of three counts of statutory rape in the first degree, *see* section 566.032, and one count of statutory sodomy in the first degree, *see* section 566.062.[1] Defendant contends that the trial court plainly erred in failing to give MAI–CR3d 304.12 as a jury instruction. Finding no plain error, we affirm the trial court's judgment.

### Factual and Procedural Background

We view the evidence and inferences drawn therefrom in the light most favorable to the verdict. *State v. Schleiermacher,* 924 S.W.2d 269, 272 (Mo. banc 1996). Viewed in that light, the following evidence was adduced at trial.

R.A.F., born December 17, 1994, met Defendant—who was 29 or 30 years old at the time—in April 2008 at a convenience store in Camdenton, where her mother worked. Although the two started out only as friends, and although Defendant was aware of R.A.F.'s age, the relationship ultimately became sexual. By September 6, 2008, R.A.F. and Defendant had engaged in sexual intercourse between three and five times, always in Defendant's trailer.

On the afternoon of September 6, 2008, R.A.F. invited a friend from school, A.C.P., born January 5, 1995, to "her brother's" trailer in Camdenton; the trailer actually belonged to Defendant. A.C.P.'s father dropped off both girls at the trailer. The trio began to play the game "Truth or

---

1. All statutory references are to RSMo Cum. Supp.2006, unless otherwise indicated.

Dare." R.A.F. was dared to "[g]ive [Defendant] a blow job." According to A.C.P., R.A.F. performed oral sex on Defendant for approximately thirty seconds while A.C.P. sat on the other end of the couch. A little later during the game, Defendant asked A.C.P. to dare R.A.F. to have sex with him, but A.C.P. refused. The group then decided to watch a movie.

During the movie, Defendant and R.A.F. went into the back bedroom, while A.C.P. remained laying on the floor of the living room. Shortly thereafter, A.C.P. walked to the back of the trailer to use the bathroom; inside the bathroom was a door that was open to the back bedroom. Through that open door, A.C.P. saw R.A.F. on top of Defendant; Defendant was completely naked, and R.A.F. was naked from the waist down. They were engaged in sexual intercourse. A.C.P. returned to the living room and fell asleep.

When she awoke a short while later, R.A.F. and Defendant were still in the back bedroom. A.C.P. returned to the doorway of the back bedroom to see what they were doing and, when R.A.F. would not pay attention to her, A.C.P. entered the room. R.A.F. then stole A.C.P.'s shorts and underwear. Defendant and A.C.P. then stole R.A.F.'s pants and hid them in the living room. R.A.F. pulled A.C.P. down onto the bed and held her arms down while Defendant held down "any other part that [she] was moving." R.A.F. told Defendant "to put his finger inside [A.C.P.]" and, after he did so, asked A.C.P., "[D]o you like it?" A.C.P. replied, "[N]o[,]" and A.C.P. kicked at Defendant and R.A.F. until Defendant removed his fingers. A.C.P. stood up from the bed, put on her underwear and shorts, and told R.A.F. they needed to leave. R.A.F. did not want to go, and she told A.C.P., "[I]t will be fine, we won't get in trouble."

A.C.P. returned to the living room and restarted the movie where she had left off. She tried to call her father, but her cell phone's battery was dead.

A little while later, A.C.P. returned to the bathroom, and again saw, through the doorway, R.A.F. and Defendant having sexual intercourse; she could also hear the bed squeaking. Defendant was once again completely naked, and R.A.F. had on only her shirt. This time, Defendant was on top of R.A.F., who was lying on the bed. A.C.P. again told R.A.F. they needed to leave, and approximately ten minutes later, R.A.F. returned to the living room. The girls then left the trailer and walked to R.A.F.'s house, where they were picked up by A.C.P.'s father.

The following week, A.C.P. told a teacher about what had happened; the teacher sent A.C.P. to the counselor. The counselor had A.C.P. call her father, and then the counselor called the police. A.C.P. went to the Camdenton Police Department after school that day and related the events of September 6 to Sergeant Chris Rector and Ryan Martin of the Children's Division. Sergeant Rector's interview with A.C.P. was videotaped.

After speaking with A.C.P., Sergeant Rector went to Defendant's trailer and brought Defendant to the police station for questioning. After being informed of his *Miranda*[2] rights, Defendant agreed to speak with Sergeant Rector. This interview was also videotaped. Initially, Defendant "denied having any type of sexual contact with either of the girls[,]" but he eventually admitted to having sex with R.A.F. twice and sexual contact with A.C.P. on September 6, as well as to having sex with R.A.F. before that date, and his statements corroborated the state-

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

ments made by A.C.P., including the specific movie they were watching and the manner in which he and R.A.F. engaged in sexual relations. Defendant then made a handwritten statement. Sergeant Rector also spoke with R.A.F., who further corroborated many statements of both A.C.P. and Defendant.

Defendant was arrested and charged with three counts of first-degree statutory rape pursuant to section 566.032—one count each for the two episodes of intercourse with R.A.F. on September 6 and one count pertaining to intercourse that occurred before that date (Counts I, II, and III)—and two counts of first-degree statutory sodomy pursuant to section 566.062—one count for having R.A.F. perform oral sex on him on September 6 (Count IV) and one count for putting his fingers in A.C.P.'s vagina (Count V). In response to Defendant's motion for change of venue, the case was transferred from Camden County to Laclede County. At Defendant's trial, both R.A.F. and A.C.P. testified, as did Sergeant Rector. Both girls identified Defendant in the courtroom. Additionally, the videotaped interviews of A.C.P. and Defendant were played for the jury. Defendant did not testify, nor did he present any evidence.

During the jury instruction conference, MAI–CR3d 304.12, entitled "Verdict Possibilities: One Defendant—Multiple Counts—Separate Verdicts[,]" was not tendered to the trial court or requested to be given by either party or otherwise discussed in any manner. Consequently, it was not submitted to the jury. The jury found Defendant guilty of all three counts of first-degree statutory rape, as well as the count of first-degree statutory sodomy pertaining to A.C.P. (Count V). The jury acquitted Defendant of one count of first-degree statutory sodomy pertaining to

R.A.F. (Count IV). Defendant was sentenced to twenty years' imprisonment for each of the three counts of statutory rape and forty-five years' imprisonment for the statutory sodomy count, with all sentences to run concurrently. Following the denial of his motion for new trial, Defendant timely filed this appeal.

In his sole point on appeal, Defendant contends that the trial court erred in failing to submit to the jury a mandatory instruction, patterned after MAI–CR 3d 304.12, requiring the jury to consider each offense separately, and that such failure so prejudiced Defendant that it resulted in manifest injustice or a miscarriage of justice.

### Standard of Review

Defendant concedes that he did not properly preserve his claim of instructional error for our review; therefore, his claim is subject only to plain error review, under Rule 30.20.[3]

"Rule 30.20 is no panacea" for unpreserved error, and does not justify review of all such complaints, but is used sparingly and limited to error that is evident, obvious, and clear. Not all prejudicial error—that is, reversible error—can be deemed plain error. A defendant's Rule 30.20 burden is "much greater"—not merely to show prejudice, but manifest injustice or a miscarriage of justice—which in this context means outcome-determinative error. We are not required to review for plain error; to do so is within our discretion. The two-step analysis is (1) did the trial court commit evident, obvious, and clear error affecting the defendant's substantial rights; and (2) if so, did such plain error actually result in manifest injustice or a miscarriage of justice?

3. All rule references are to Missouri Court Rules (2010).

*State v. Smith,* 293 S.W.3d 149, 151 (Mo. App.2009) (internal quotations and citations omitted).

As to the second step in our review, Defendant asserts, without any supporting legal analysis, that the trial court's omission of this instruction "should be considered 'structural error,' " which requires automatic reversal, without any requirement for Defendant to demonstrate actual manifest injustice or a miscarriage of justice. *See generally Arizona v. Fulminante,* 499 U.S. 279, 306–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Defendant, however, cites no legal authority either mandating such treatment for all claims of instructional error or supporting why this particular alleged claim of instructional error should be considered as such. Generally, instructional error is not considered to be structural error. *See, e.g., State v. Carson,* 941 S.W.2d 518 (Mo. banc 1997) ("A faulty instruction is grounds for reversal if the defendant has been prejudiced."); *State v. Tripp,* 939 S.W.2d 513 (Mo.App.1997) ("Failure to give an MAI–CR instruction where appropriate is error and failure to follow an accompanying Note on Use is error.... However, the prejudicial effect of such error must be judicially determined."). In fact, the only case cited by Defendant related to this assertion, *State v. Goucher,* 111 S.W.3d 915 (Mo.App.2003), expressly states, "Although an instruction may be mandatory, this opinion should not be read as holding that all instructional error is *per se* reversible. Most defective instructional procedures are subject to a prejudicial analysis." *Id.* at 920 n. 8. In the absence of any citation to relevant legal authority supporting Defendant's assertion that this particular alleged instructional error is structural error, we decline to engage in that type of analysis and proceed in accordance with our well-established standard for plain error review.

### Discussion

■ Our analysis of the first step in our review leads us to conclude that the trial court here committed evident, obvious, and clear error affecting Defendant's substantial rights. MAI–CR 3d 304.12 provides the pattern for a jury instruction to read, "The defendant is charged with a separate offense in each of the [*Insert number.*] counts submitted to you. Each count must be considered separately. You should return a separate verdict for each count and you can return only one verdict for each count." The corresponding "Notes on Use" mandates that "[t]his instruction is to be used when one defendant is charged in separate counts and may be convicted of an offense under each count." Here, Defendant was charged with multiple counts of first-degree statutory rape and sodomy, and the trial court failed to give this instruction to the jury. As the State concedes, the failure to give a mandatory instruction to the jury is error. *State v. Deck,* 303 S.W.3d 527, 545 (Mo. banc 2010). This error, coupled with a defendant's right to have each charge considered separately by the jury, *see State v. Rudd,* 759 S.W.2d 625, 630 (Mo.App.1988), leads us to the conclusion that Defendant has satisfied the first step in our review for plain error. We now turn to the second step to determine whether the trial court's failure to give MAI–CR 3d 304.12 to the jury in this case actually resulted in manifest injustice or a miscarriage of justice.

■ In order to establish that an alleged instructional error rose to the level of plain error, an appellant "must demonstrate that the trial court so misdirected or failed to instruct the jury that it is evident that the instructional error affected the jury's verdict." *State v. Taylor,* 134 S.W.3d 21, 28 (Mo. banc 2004). However, when such an issue of instructional error has not been preserved for appeal, that

error must rise to the level of manifest injustice or a miscarriage of justice. *Id.* "Instructional error, even if clear and obvious, is rarely found to result in manifest injustice or a miscarriage of justice, requiring reversal for plain error." *State v. January,* 176 S.W.3d 187, 193 (Mo.App. 2005) (citing *State v. Roe,* 6 S.W.3d 411, 415 (Mo.App.1999)).

■ The general proposition that "if multiple offenses are submitted against a single defendant, the different offenses submitted should be distinguished[ ]" is well-established. *Rudd,* 759 S.W.2d at 630. In the absence of such a distinguishing instruction, however, the relevant inquiry becomes whether the jury was confused by the manner in which the charges against the defendant were presented, or if "the jury clearly understood that the defendant was charged with different offenses in distinct counts and that each offense was to be considered separately." *Id.* We are convinced of the latter in this case.

■ First, the jury received separate verdict directors for each of the five counts against Defendant. Each of these verdict directors contained information specific to the particular count with which it dealt, including the particular minor alleged to have been involved and the particular manner of sexual activity alleged to have been performed.

Second, the jury heard evidence supporting each of the five counts against Defendant and heard Defendant confess to the specific acts charged in Counts I, II, III, and V. Moreover, the jury found Defendant guilty on these four counts in a separate verdict form for each count.

Finally, while finding Defendant guilty on Counts I, II, III, and V, the jury acquitted Defendant on Count IV, which pertained to R.A.F. performing oral sex on Defendant on September 6, 2008, a charge based solely upon A.C.P.'s testimony. Such a split verdict indicates that the jury considered each count individually and thus conformed to the procedure outlined in the omitted instruction.

These circumstances demonstrate that the jury clearly understood its responsibility and was not confused by the trial court's failure to give MAI–CR 3d 304.12. Furthermore, Defendant offers nothing but speculation as to how the trial court's failure to give the instruction consequently prejudiced him, and we cannot base a determination of prejudice upon mere speculation. *See State v. Rodgers,* 641 S.W.2d 83, 85 (Mo. banc 1982). The absence of any prejudice precludes any determination that Defendant suffered a manifest injustice or a miscarriage of justice by the trial court's omission of an instruction patterned after MAI–CR 3d 304.12. *See Smith,* 293 S.W.3d at 151. Defendant's point is denied.

### Decision

The trial court's judgment is affirmed.

BARNEY, P.J., and BURRELL, J., concur.