STATE of Missouri, Plaintiff–
Respondent,

v.

Allan S. MCCAULEY, Defendant–
Appellant.

No. SD 29723.

Missouri Court of Appeals,
Southern District,
Division Two.

May 25, 2010.

Motion for Rehearing and Transfer Denied
June 15, 2010.

Application for Transfer Denied
Aug. 31, 2010.

Ellen H. Flottman, Columbia, MO, for Appellant.

Chris Koster, Attorney General, and John M. Reeves, Assistant Attorney General, Jefferson City, MO, for Respondent.

GARY W. LYNCH, Presiding Judge.

Appellant, Allan McCauley ("Defendant"), appeals the trial court's judgment, following a jury trial, convicting him of three counts of aggravated stalking. *See* § 565.225.3.[1] Defendant claims insufficient evidence was presented to the jury that he made a "credible" threat to the victim, as required by § 565.225.3 and as defined by § 565.225.1(2), and that, because his actions were a single, continuing course of conduct over a four-day period, convicting him of three separate offenses during that time period violated § 556.041 and constituted double jeopardy. Finding no merit in Defendant's claims, we affirm.

### Background

Over the course of four days, January 30, 2006, through February 2, 2006, Defendant called the victim numerous times at

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated. All references to § 565.225 are to RSMo Cum.Supp.2005.

her place of employment.[2] According to the victim, during some of these calls, Defendant threatened that she would "never make it home that evening," that Defendant would cut her up, bust open her head, take a baseball bat after her and beat her to a pulp, and that Defendant would punch her in the face and make a tumor, which the victim had from birth, explode in her head. Also, according to the victim, Defendant threatened her saying, "I'm going to get you," "I'm going to kill you," and "You won't make it home alive." The victim, however, was unable to correlate any particular threat to any specific day during the four-day period.

On occasion, during these four days, the victim was unavailable to answer the phone when Defendant called, in which event his calls were transferred to the victim's voice-mail. In those instances, Defendant left voice-mail messages that included some of his threats toward the victim. Seventeen of those messages, along with one live telephone conversation between Defendant and the victim, were captured on a digital recorder and preserved on a compact disc by an investigating law enforcement officer, Detective Chris Barb with the Springfield Police Department. That compact disc was marked as State's Exhibit 2 during trial, admitted into evidence, and played for the jury.[3] According to Detective Barb, these messages were left beginning on January 30, "all the way up through the 2nd of Febru-

ary," and were typically left in the afternoon hours. Apparently, the voice-mail messages were both date-stamped and time-stamped.

Defendant's telephone records, Exhibits 1 and 1A, were admitted into evidence and published to the jury. Detective Barb testified that he reviewed these exhibits and found that the dates and times of some calls shown being made to the telephone number of the victim's place of employment from Defendant's telephone correlated with the dates and times of the recorded voice-mail messages contained in Exhibit 2.

Defendant was charged by information and convicted on three counts of aggravated stalking, in violation of § 565.225.3: Count I for conduct on January 30, 2006; Count II for conduct on January 31, 2006; and Count III for conduct on or between February 1, 2006, and February 2, 2006. After Defendant was found guilty by a jury, he was sentenced to four years' imprisonment on each count, with the sentences under Count I and Count II to be served consecutive to each other and concurrent to the sentence under Count III.

### Discussion

On appeal, Defendant brings two points. First, Defendant claims that the trial court plainly erred in sentencing Defendant on three separate counts of aggravated stalking because this violated § 556.041,[4] and

---

**2.** Defendant concedes that he made at least 124 telephone calls to the victim during this four-day period. Defendant does not challenge that these calls purposely and repeatedly harassed victim. *See* § 565.225.3.

**3.** No verbatim record of the messages in Exhibit 2 is contained in the transcript. At the point in the trial when this exhibit was played for the jury, the transcript merely notes: "State's Exhibit 2 played."

**4.** Section 556.041 provides:

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if
(1) One offense is included in the other, as defined in section 556.046; or
(2) Inconsistent findings of fact are required to establish the commission of the offenses; or
(3) The offenses differ only in that one is defined to prohibit a designated kind of

constituted double jeopardy, in violation of the Fifth and Fourteen Amendments of the United States Constitution. Second, Defendant claims that the trial court erred in denying Defendant's motion for judgment of acquittal at the close of the evidence because the evidence was insufficient to support a finding that Defendant made a "credible" threat to the victim as required by § 565.225.3. For ease of analysis, we address these claims in reverse order.

### Sufficiency of the Evidence

When reviewing the sufficiency of the evidence, this Court must consider the evidence and all reasonable inferences reasonably drawn from the evidence in the light most favorable to the verdict. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that the defendant was guilty. *State v. Hopkins*, 841 S.W.2d 803, 804 (Mo.App. 1992). To support the conviction, the State must prove beyond a reasonable doubt that the defendant committed each element of the offense charged. *State v. Johnson*, 741 S.W.2d 70, 73 (Mo.App.1987).

On the relevant dates, § 565.225.3 provided that "[a]ny person who purposely and repeatedly harasses or follows with the intent of harassing or harasses another person, and makes a credible threat with the intent to place that person in reasonable fear of death or serious physical injury, commits the crime of aggravated stalking." The making of a credible threat is the only element of the charged offenses that Defendant claims is unsupported by sufficient evidence.

A "credible threat" was defined, on the relevant dates, in § 565.225.1(2) as,

> a threat made with the intent to cause the person who is the target of the threat to reasonably fear for his or her safety. The threat must be against the life of, or a threat to cause physical injury to, a person and may include a threat communicated to the targeted person in writing, including electronic communications, by telephone, or by the posting of a site or message that is accessible via computer[.]

Yet, in his point and argument, Defendant has failed to identify any element in this definition that he claims is not supported by sufficient evidence. Rather, Defendant argues that "in this case, there was nothing other than the phone calls. Nothing to show that the threats made on the telephone were 'credible.' Nothing to show that [Defendant] was even in the State of Missouri where he could act on the threats." This argument implicitly asks this Court to read into the credible-threat definition a requirement that is not present in the statute, i.e., a defendant's actual present ability to perform the threatened action. While a victim's knowledge of a defendant's ability or inability to carry out a threat may be relevant as to whether or not the threat caused the victim to "*reasonably* fear for his or her safety" (emphasis added), nothing in the language of the definition requires proof that a defendant actually possessed that ability at the time the threat was made. Defendant's second point is denied.

conduct generally and the other to prohibit a specific instance of such conduct; or
(4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

*Multiple Counts*

■ Defendant's first point is reviewed for plain error.[5]

> We are not required to review for plain error; to do so is within our discretion. The two-step analysis is (1) did the trial court commit evident, obvious, and clear error affecting the defendant's substantial rights; and (2) if so, did such plain error actually result in manifest injustice or a miscarriage of justice? Unless a defendant gets past the first step, any inquiry should end.

*State v. Smith,* 293 S.W.3d 149, 151 (Mo. App.2009) (internal citations omitted). Defendant has the burden of demonstrating plain error. *State v. Marshall,* 302 S.W.3d 720, 725 (Mo.App.2010).

In attempting to meet that burden, Defendant argues that "the three counts of aggravated stalking were a continuing course of conduct prosecuted in separate parts[.]" This is so, Defendant contends, because

> the corpus of the offense was 124 telephone calls over the course of four days, the offense is defined as a course of conduct in the statute, and dividing that course of conduct into three separate parts is an artificial distinction, as illustrated by the fact that Count III covered two days while Counts I and II covered one day each.

The State, while acknowledging that aggravated stalking under § 565.225.3 defines a course-of-conduct offense, counters Defendant's argument, asserting that, under the facts presented to the jury in this case, Defendant engaged in three separate courses of conduct each separated by a period of time in which Defendant had the opportunity to reconsider his actions. *See State v. Barber,* 37 S.W.3d 400, 404 (Mo. App.2001). Such separation by time, argues the State, coupled with Defendant's making of a credible threat on each date charged, gives rise to three separate offenses.

Given these competing theories, any § 556.041 and double jeopardy analysis must start with a review of the underlying facts. Unfortunately, all of the evidence presented to the jury as to those underlying facts is not before us in the record on appeal. Defendant has not deposited Exhibits 1, 1A, or 2 with this Court, in accordance with Rule 30.05 or this Court's special rule 4.[6] The latter rule provides, in part, that "[a]n appellant is responsible for ensuring that all exhibits necessary for the determination of any point relied on are deposited or filed with the Court."[7] "Defendant had the duty to 'file a complete record including all evidence necessary to determine all questions presented to this Court for review.'" *State v. Tanner,* 220 S.W.3d 880, 883 (Mo.App.2007) (quoting *State v. Morin,* 873 S.W.2d 858, 867 (Mo. App.1994)). In the absence of these exhibits, this Court infers that they would be favorable to the State's three separate

---

5. Defendant concedes this issue was not properly preserved for appellate review in that it was not included in his motion for new trial. *See* Rule 29.11(d); *State v. Stephens,* 88 S.W.3d 876, 880 (Mo.App.2002).

6. Defendant does not even mention the existence of these exhibits or any facts from these exhibits in his brief.

7. Because these exhibits establish the exact times of Defendant's calls and the exact wording, tenor, and timing of some of the threats made by Defendant on each of the three days at issue, they are necessary to our determination of the validity of Defendant's theory that his calls over this four-day period were only one continuing course of conduct, as opposed to the State's theory that his actions on each of the three days constituted three separate courses of conduct.

courses-of-conduct theory[8] and the trial court's sentencing of Defendant on three separate offenses, and they would be unfavorable to Defendant's theory that all of his actions over this four-day period were only one continuous course of conduct. *State v. Brumm*, 163 S.W.3d 51, 56 (Mo. App.2005); *State v. Mitchell*, 2 S.W.3d 123, 126 n. 2 (Mo.App.1999).

The application of this adverse inference precludes this Court from finding that the trial court's sentencing of Defendant for three separate instances of aggravated stalking was the commission of evident, obvious, and clear error affecting Defendant's substantial rights. In other words, Defendant has failed in his burden of demonstrating to us that his actions over the course of this four-day period were one continuous course of conduct. Having failed the first step in securing plain error review, our discretionary inquiry into Defendant's claim comes to an end. *Smith*, 293 S.W.3d at 151. Defendant's first point is denied.

### Decision

The trial court's judgment is affirmed.

SCOTT, C.J., and RAHMEYER, J., concur.

---

8. The State claims in its respondent's brief that these exhibits show that Defendant called the victim at her place of employment forty-nine times on January 30, forty-three times on January 31, starting at 1:14 p.m., and thirty-two times on February 2, starting at 1:08 p.m.; that on January 30, Defendant threatened the victim saying, "I'm gonna punch you so many times in the fuckin' face, that deal in your head's gonna explode and I'm gonna laugh[;]" that on January 31, Defendant threatened to follow the victim home that night and said that when he caught up with her, he would use a baseball bat on her; and, that on February 2, Defendant threatened the victim by saying, "I'll blow your goddamn head right off." While we cannot verify these factual assertions without reviewing Exhibits 1, 1A, and 2, we note that Defendant filed no reply brief or in any other manner denied them. If true, these facts support the State's three separate courses-of-conduct theory.