

# Missouri Court of Appeals

## Southern District

### In Division

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) No. SD37408 |
| vs. | ) |
| | ) FILED: MARCH 2, 2023 |
| SHAWN KELLY MARTIN, | ) |
| | ) |
| Appellant. | ) |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable David C. Jones, Judge

**<u>AFFIRMED</u>**

Following a jury trial, Shawn Martin ("Defendant") appeals his convictions of first-degree statutory rape (Count 1) and four counts of first-degree statutory sodomy (Counts 2 through 5) against K.M. *See* sections 566.032 and 566.062.[1] In two points, Defendant seeks plain error review under Rule 30.20,[2] claiming that the circuit court plainly erred in 1) "failing to *sua sponte* declare a mistrial or issue a curative instruction after the State asserted during its closing argument that the jury could ensure 'that this doesn't happen to future children'"; and 2) "admitting the portions of [Defendant]'s interrogation where [the detective] repeatedly asserted that children do not lie about sexual abuse[.]" Because Defendant failed to make the requisite

---

[1] All statutory references are to RSMo Cum.Supp. (2017).
[2] All rule references are to Missouri Court Rules (2022).

showing for us to engage in plain error review, we affirm.

## Factual and Procedural Background

Viewed in the light most favorable to the verdicts, ***State v. Anglin***, 45 S.W.3d 470, 471 (Mo.App. 2001), we briefly summarize the relevant evidence, the sufficiency of which is unchallenged.

Defendant stayed at K.M.'s home between January and June of 2018, when K.M. was five years old. Defendant was an acquaintance of K.M.'s stepfather ("Stepfather"). K.M. made a disclosure to her mother ("Mother") in September of 2019 that prompted a hotline call to the Missouri Department of Social Services.

An investigator with the Greene County Children's Division (the "Children's Division") met with K.M. and gathered enough information to refer the case to the Child Advocacy Center (the "CAC") for further investigation. At the CAC, K.M. made various disclosures to a forensic investigator, identifying Defendant by name and saying that Defendant engaged in the various acts of sexual abuse set out in Counts 1 through 5. Additionally, K.M. made allegations of sexual abuse involving Stepfather.

The results of the CAC interview were forwarded to the Springfield Police Department. Corporal Jason Marcum ("Detective Marcum") questioned Defendant and the audio of their exchange was recorded.[3] Initially, Detective Marcum's questions focused on Defendant's knowledge of sexual abuse committed by Stepfather. Detective Marcum then transitioned to asking Defendant questions relating to K.M.'s sexual abuse allegations involving Defendant. Defendant initially denied involvement but, eventually, made various incriminating admissions consistent with the charges in Counts 2 through 5. During the course of his questioning,

---

[3] Defendant was read his Miranda rights and then signed a written waiver of those rights. *See **Miranda v. Arizona***, 384 U.S. 436 (1966).

Detective Marcum made several declaratory statements and inquiries such as "we agree that [K.M.] isn't a liar"; "why would [K.M.] make this stuff up"; "[K.M.] told me the truth about [Stepfather] . . . which tells me she's telling me the truth about you too"; "I know [K.M.] is telling me the truth"; "the only logical conclusion is that [K.M.]'s telling me the truth and that something happened between you guys"; and "[K.M.] wouldn't make something like this up."

At trial, Mother, K.M., the Children's Division investigator, the CAC forensic investigator, and Detective Marcum testified. Various exhibits were admitted into evidence, including the CAC forensic interview of [K.M.] and the audio interview of [Defendant] by Detective Marcum. Defendant objected to the latter exhibit "based on [his] pretrial motion[,]" which only included the objections that Defendant's statements were "not voluntary" and that Defendant "did not knowingly or intelligently waive his right to remain silent or consult with an attorney." The circuit court overruled Defendant's objection and the exhibit was admitted into evidence.

The prosecutor spent much of the State's initial closing argument explaining Counts 1 through 5 and arguing how K.M.'s allegations during the CAC interview and Defendant's answers in response to Detective Marcum's questions proved the charged counts. As part of his concluding statements, the prosecutor presented the following argument without objection:

> We live in a society and in a time where we almost daily, if not weekly, talk about holding child offenders accountable, *making sure that this doesn't happen to future children*. Very few individuals are ever offered the actual opportunity to make sure that that happens. You all have been put in the unique position of being able to hold a sex offender accountable. So, in a way, this is where the rubber meets the road. This is where you all will be able to tell [Defendant] that what he did to [K.M.] -- preying on her, taking advantage of her -- is not okay and it will not be okay for him to ever do that type of sexual abuse.

(Emphasis added.)

Ultimately, the jury found Defendant guilty of Counts 1 through 5, and the circuit court

sentenced Defendant to life in prison on each count, with the sentences to run consecutively. Defendant timely appeals. For ease of analysis, we review Defendant's two points relied on together.

## Standard of Review

Defendant concedes he did not raise the claims he makes in this appeal as objections at trial and, therefore, the claims are not preserved for appellate review. The following standard of review in ***State v. Brandolese*** governs our analysis:

> Generally, this Court does not review unpreserved claims of error. *State v. Cella*, 32 S.W.3d 114, 117 (Mo. banc 2000). Rule 30.20 alters the general rule by giving appellate courts discretion to review "plain errors affecting substantial rights may be considered in the discretion of the court ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 30.20. "Plain error review is discretionary, and this Court will not review a claim for plain error unless the claimed error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" *State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017) (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995), and Rule 30.20). "The plain language of Rule 30.20 demonstrates that not every allegation of plain error is entitled to review." *State v. Nathan*, 404 S.W.3d 253, 269 (Mo. banc 2013). "The plain error rule is to be used sparingly and may not be used to justify a review of every point that has not been otherwise preserved for appellate review." *State v. Jones*, 427 S.W.3d 191, 195 (Mo. banc 2014). Unless manifest injustice or a miscarriage of justice is shown, an appellate court should "decline to review for plain error under Rule 30.20." *Id.* at 196. Finally, "the defendant bears the burden of demonstrating manifest injustice entitling him to" plain error review. *State v. Oates*, 540 S.W.3d 858, 863 (Mo. banc 2018) (quoting *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)).

601 S.W.3d 519, 525-26 (Mo. banc 2020).

## Discussion

In his first and second points, Defendant contends that the circuit court "plainly erred in admitting the portions of [Defendant]'s interrogation where [Detective] Marcum repeatedly asserted that children do not lie about sexual abuse" and "plainly erred in failing to *sua sponte* declare a mistrial or issue a curative instruction after the State asserted during its closing

4

argument that the jury could ensure 'that this doesn't happen to future children[.]'" As to his challenge attacking the admission of Detective Marcum's statements, Defendant asserts that "from a reasonable juror's perspective, [Detective] Marcum was a highly trained and experienced officer in the area of child-victims, and his repeated comments vouching for the credibility of K.M. invaded the province of the jury[.]" As to his challenge attacking the prosecutor's closing argument, Defendant asserts that "the State was making an improper 'future dangerousness' argument[.]"

Even if the circuit court erred, without some facial showing that a manifest injustice or miscarriage of justice resulted, plain error review should be denied. *See Brandolese*, 601 S.W.3d at 525-26. "Not all prejudicial error—that is, reversible error—can be deemed plain error." *State v. Smith*, 293 S.W.3d 149, 151 (Mo.App. 2009) (internal quotation marks omitted). "A defendant's Rule 30.20 burden is much greater—not merely to show prejudice, but manifest injustice or a miscarriage of justice—which in this context means outcome-determinative error." *Id.* (internal quotation marks omitted).

With that framework in mind, we note that similar statements by a police officer during an interrogation or interview of a defendant have been found admissible. *See, e.g.*, *State v. Kluck*, 968 S.W.2d 206, 208 (Mo.App. 1998) (holding the admission of a police officer's testimony, in which the officer recounted telling the defendant during a murder investigation interview that the officer did not believe the defendant, was not an abuse of discretion because the officer was recounting the "give-and-take" of the interview).[4] Additionally, even highly improper remarks during closing argument have been found to not rise to the level of a manifest injustice warranting plain error review. *See, e.g.*, *State v. Dixon*, 70 S.W.3d 540, 550 (Mo.App.

---

[4] Abuse of discretion is a lower standard of prejudicial error than plain error and, therefore, a finding of no abuse of discretion will preclude a finding of plain error. *State v. Fleming*, 541 S.W.3d 560, 561 n.2 (Mo.App. 2018).

5

2002) (holding the prosecutor's remark at the end of closing argument that the jury should "Send [the defendant] to prison for the rest of his life so he's not out raping any other little girls," did not result in manifest injustice given the remark was isolated and not extensive, was contained in otherwise proper closing argument, and the evidence of the defendant's guilt meant there was little likelihood the result would be different if there was a new trial), *overruled on other grounds by* ***State v. Claycomb***, 470 S.W.3d 358, 361 (Mo. banc 2015).

Here, Defendant presents the same argument in each of his two points as to why he believes, under the facts of this case, he suffered a manifest injustice. During her trial testimony, K.M., who was then eight years old, answered in the negative when asked if she knew why she was in the courtroom and if she knew someone named Shawn. According to Defendant, "given K.M.'s inability to remember [Defendant] at trial and the absence of physical corroboration of the accusations against [Defendant], [each claimed] error led to a manifest injustice."

Defendant's argument, however, ignores that "[o]ur appellate courts have often noted that the testimony of young victims about sensitive and embarrassing subjects commonly contains some contradictions, variations or memory lapses." ***State v. Morton***, 229 S.W.3d 626, 630 n.2 (Mo.App. 2007) (citing ***Schaal v. State***, 179 S.W.3d 907, 919 (Mo.App. 2005); ***N.J.K. v. Juvenile Officer***, 139 S.W.3d 250, 256-57 (Mo.App. 2004); ***State v. Sprinkle***, 122 S.W.3d 652, 663 (Mo.App. 2003); ***State v. Mattic***, 84 S.W.3d 161, 169 (Mo.App. 2002); ***State v. Werneke***, 958 S.W.2d 314, 319 (Mo.App. 1997)). "[I]nconsistencies or contradictions in statements by young children relating to sexual experience do not, by themselves, deprive the statements of all probative force." ***State v. Anderson***, 653 S.W.3d 677, 683-84 (Mo.App. 2022) (internal quotation marks omitted).

Therefore, the mere fact that K.M. failed to identify Defendant at trial offers little support

for Defendant's manifest injustice argument. Moreover, we note that before ending his direct examination, the prosecutor went on to elicit further testimony from K.M. explaining her earlier responses to his questions. The prosecutor asked, "Is it hard to talk about this stuff?" K.M. responded, "Yeah." The prosecutor then asked, "And when you don't want to talk about it, do you just kind of say, 'No'?" Again, K.M. responded, "Yeah." Thus, the jury was provided an explanation for any inconsistency arising from K.M.'s testimony and was free to consider this explanation in its credibility determinations and fact finding.

In light of this context, as well as all of the other evidence presented, including Defendant's own incriminating statements to Detective Marcum, we fail to see how, absent either of Defendant's claimed errors, the outcome of his trial would have been different. *Cf.* ***State v. Hill***, 247 S.W.3d 34, 42 (Mo.App. 2008) (holding that minor inconsistencies in child molestation victims' out-of-court statements—including a victim's denial of touching to a CAC specialist after victim had made allegations of touching to parents and police—did not prevent a confrontation clause violation involving victims' trial testimony from being harmless beyond a reasonable doubt).

Accordingly, because Defendant failed to facially establish substantial grounds for believing that a manifest injustice or miscarriage of justice resulted from the alleged errors, we decline to engage in plain error review. *See* ***Brandolese***, 601 S.W.3d at 525-26.

### Decision

The circuit court's judgment is affirmed.

BECKY J. W. BORTHWICK, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS